HENDERSON
v.
BATES.

*Monday,*
*December 8,*

## HENDERSON v. BATES and Others.

Several executions in favour of different persons, were levied on certain personal property as belonging to *A.,* the execution-defendant. *B.* claiming the property levied on to be his, filed a bill in chancery to obtain an injunction, and for general relief. *Held,* on demurrer, that the bill could not be sustained; the complainant's remedy being at law and not in equity.

Nov. Term,
1834.

HENDERSON
v.
BATES.

*Monday,*
*December 8.*

APPEAL from the *Marion* Circuit Court.

*Henderson* filed a bill in chancery against *Town* and others. The material allegations in the bill are as follows:—The complainant, in *January*, 1832, leased his tavern-house in *Indianapolis* to *Town* for the term of five years, at the annual rent of 500 dollars; and *M'Carty*, *Blythe*, and *Bradley*, were the lessee's sureties in the lease. About the same time, the complainant made a separate contract with *Town*, by which he agreed to sell him certain household and kitchen furniture for the sum of 1,190 dollars and 28 cents; which furniture was left by the complainant in *Town's* possession in the tavern-house, and was to be the property of *Town* when he should execute, within a reasonable time, notes with approved surety for the amount, payable in five equal annual instalments. *Town* occupied the tavern-house until *August*, 1832, without having given the notes and surety for the furniture, and which furniture, consequently, continued to be the complainant's property.

In *August*, 1832, *Town* entered into partnership in keeping the tavern with *Pulliam*, and transferred one half of his own personal property to *Pulliam*—not including in the transfer the furniture aforesaid belonging to the complainant. The tavern-house was occupied by *Town & Pulliam* until *November*, 1832; the complainant's said furniture remaining in their possession in the house. At this time *Town* became insolvent, and, to indemnify his sureties above-mentioned for their liability to the complainant for the rent and damages, &c., *Town & Pulliam* delivered to them possession of the tavern-house, and *Town* transferred to them his personal property on the premises, and his interest in that held by him in partnership with *Pulliam*. The lease for the house was transferred to *Town's* sureties with the complainant's consent; and the rent then due was about 400 dollars. *Town* not only failed to comply with his contract, as to the furniture which he received from the complainant, but he carried away and destroyed a large portion of it, injured the tavern-house, &c. On the 23d of *November*, 1832, *Town's* sureties transferred to the complainant, in discharge of their liability, the tavern-house and property received by them as aforesaid.

The lease, inventories, transfers, &c. are made a part of the bill.

*Town*, after the said transfer to his sureties, being indebted

to various persons, fraudulently confessed judgments in their favour for their respective claims. (These judgments, between twenty and thirty, and in favour of nearly as many creditors, are here set out.) At the same time, *Town & Pulliam* confessed several judgments in favour of their creditors. (These judgments, also, are here set out.) Executions on the judgments against *Town* and against *Town & Pulliam*, were issued and put into the hands of two constables, and were levied indiscriminately on the furniture of the complainant delivered to *Town* as aforesaid, on the property transferred to *Town's* sureties, and on that of *Town & Pulliam;* and the property thus levied on, was advertised for sale by the officers.

*Pulliam* is required to set forth the partnership transactions, &c.; and *Town, Town & Pulliam*, and the execution-plaintiffs, are made defendants. The bill prays for an injunction against the further proceedings of the execution-creditors and the officers, and for general relief.

*Pulliam* filed his answer, confessing the allegations in the bill so far as his knowledge extended, and filed interrogatories in the nature of a cross-bill; *Town* made no answer; and the bill was demurred to by the execution-plaintiffs. The causes of demurrer were,—1. That the complainant claimed the property levied on as his own, and his remedy was therefore at law: 2. That the charging *Town* with fraudulently procuring goods on credit, &c., committing waste, &c., and the requiring *Town* and *Town & Pulliam* to answer, &c. are attempts to join in the bill several matters of different natures against several defendants. The demurrer was sustained, the injunction which had been granted in vacation was dissolved, and the bill, as to the execution-plaintiffs dismissed. A motion by *Pulliam* for an answer to his cross-bill was overruled, and his cross-bill considered as dismissed.

M'Kinney, J., after giving a statement of the case, proceeded as follows:

The principal question to be settled in this case is, Does the bill of *Henderson* show that he is without relief at law, and that a Court of equity should interpose? The complainant contends that the case presented by the bill is peculiarly appropriate to a Court of equity, and in support of his position assumes several grounds, each of which in the course of this examination will be noticed. The object of the bill is to protect from sale certain personal property, levied on by executions against *Town*

and against *Town & Pulliam*. A part of this property is claimed by *Henderson*, by a transfer made to him by the sureties of *Town*, and the residue is claimed on original ownership, and a denial of the divestment of his right by the possession of *Town* and of *Town & Pulliam*.

The rule is well settled, that relief will not be granted in chancery, when at law a complete remedy is afforded. 3 Atk. 740.—3 Bro. Parl. Cas. 525.—Mitf. Pl. 111.—*Cunningham* v. *Caldwell*, Hard. 123.—*Waggoner's Trustees* v. *M'Kinney et al.* 1 Marsh. R. 479.

It is also as well settled, that chancery will not entertain a bill when personal property is the subject-matter, unless in some peculiar cases; nor will it interpose and enjoin the sale of personal property, taken in execution, either on the ground, that it is not the property of the defendant in the execution but belongs to a third person, or that it belongs to the complainant, unless it be shown that if the property were sold, the complainant would be without remedy at law. *Nesmieth* v. *Bowler*, 3 Bibb, 487.—*Kendrick* v. *Arnold*, 4 Bibb, 235.

The remedy at law must not only be incomplete, but the damages not an adequate compensation, to authorise a Court of equity to interpose. In the case of *Bowyer* v. *Creigh*, 3 Rand. Rep. 25, the question of jurisdiction is fully examined, and the position sustained, that equity interferes in no case where the plaintiff claims as incumbrancer merely, and, where he claims as owner, only in those cases where from the peculiar nature of the property and circumstances of the case, the remedy at law is incomplete. In the cases of *Wilson* v. *Butler*, 3 Munf. Rep. 559,—*Scott et ux.* v. *Halliday*, 5 id. 103,—and *Sampson* v. *Bryce*, 5 id. 175, in which equity exercised jurisdiction, the plaintiff claimed the property, not as security for money, but as belonging of right to himself, and this property was slaves; for this property being capable of possessing moral qualities and thus rendered invaluable, it was considered that damages would not be an adequate compensation. The Court in *Bowyer* v. *Creigh*, review the grounds of chancery jurisdiction, and among others present the following:—"Where, pending a litigation, the property in dispute is in danger of being lost, and the powers of the Court in which the controversy depends are insufficient for the purpose, equity will interpose to preserve it." "Equity exercises a jurisdiction to put an end to the

oppression of repeated litigations, after satisfactory determinations of the question, upon the principle *interest reipublicæ ut sit finis litium.*" It would thus seem, that in cases of personal property the interposition of a Court of equity is rare, and only occurs when the legal remedy is incomplete, and damages are not an adequate compensation. The case in 3 P. Wms. 390, of the ancient silver altar piece, in 1 Vern. 273, of the horn by which an estate was held, in 3 Ves. 70, of the silver tobacco box belonging to a club, and some others, and in *Virginia*, of slaves, are examples of such interference afforded by the books, and show that in those cases the remedy at law was incomplete. Those cases rest upon their own peculiar grounds and do not affect the rule laid down.

It is however said that this is a bill of peace, thus giving jurisdiction to a Court of chancery, and therefore the injunction was correctly granted, and should not have been dissolved. As this position was strongly urged, it would seem to require particular examination. Maddock, in 1 vol. p. 166, says, "Bills of peace are made use of where a person has a right which may be controverted by various persons, at different times, and by different actions; and the Court will thereupon prevent a multiplicity of suits, by directing an issue to determine the right, and ultimately an injunction. Another occasion where a bill of this kind is resorted to, is, where there have been repeated attempts to litigate the same question by ejectment, and repeated and satisfactory trials; in which cases, the Court upon such a bill, preferred by all the parties interested, or by some of them in the names of themselves and the rest, will grant a perpetual injunction to restrain further litigation."

The examples and authorities referred to by Maddock show the kind of right to which the text applies. It is that which exists between lords of manors and their tenants, and between tenants of one manor and another. *Mayor of York* v. *Pilkington*, 1 Atk. 282.—*Ld. Tenham* v. *Herbert*, 2 Atk. 483. Such bills also lie for duties, as in the case of the *City of London* v. *Perkins*, where the city of *London* brought only a few persons before the Court, who dealt in those things whereof the duty was claimed, to establish a right to it. 1 Harr. C. 127. "Where a bill was brought by one tenant of a manor, suggesting a custom for the tenants of the manor of *A.* (of which he was one) to cut turves in the manor of *B.*, to quiet him and to have an

issue directed as to the right, the Court said, 'this bill is improper and inconsistent with the nature and end of a bill of peace, which is, that where several persons having the same right are disturbed, on application to the Court to prevent expense and multiplicity of suits, issues will be directed, and one or two determinations will establish the right of all parties concerned, on the foot of one common interest, and the bill is preferred by all the parties interested, or a determinate number in the name of themselves and the rest; but in this case one only brings the bill on the general right, and not on the foot of any particular right;' and therefore the bill was dismissed with costs." 1 Madd. 172. So a bill of this kind, after five trials in ejectment and verdicts in all of them, has been entertained, and a perpetual injunction granted. *Ld. Bath* v. *Sherwin*, Pr. Ch. 261.

In the cases in which, to prevent a multiplicity of suits, chancery has entertained jurisdiction, the plaintiff ought to establish his right by a determination of a Court of law in his favour, before his bill in equity. Mitf. Pl. 128.

The case of the *Trustees of Huntington* v. *Nicoll*, 3 Johns. R. 566, has been cited by the complainant as sustaining the bill. Between that case and the present, little if any analogy is perceived. In that case several actions of trespass were brought, and the subject-matter was land. A verdict in one case was found, and the other cases were ready for trial, and from the nature of the respective claims, litigation would not have been arrested by the suits then pending. The jurisdiction of equity, in that case, was founded on one verdict, the pendency of several actions, the liability to others, the great expense attending those actions, and from the case being within the rule laid down in *Tenham* v. *Herbert*, 2 Atk. 483, that there were some cases in which a man, by a bill of peace, might come into chancery before his right was established at law. The distinction was applied to disputes between lords of manors and their tenants, and between the tenants of one manor and another. The Court in *New-York*, even with this distinction, was, however, divided as to the jurisdiction.

From this view of the law, the bill before us is not entitled to the character of a bill of peace, and cannot be regarded as one.

It is further urged by the complainant that equity will, pending litigation, where property, the subject of litigation, is in

Nov. Term, 1834.

HENDERSON
v.
BATES.

danger of being lost, interpose and preserve it. This is unquestionably a ground of jurisdiction, as previously noticed, but it is obviously not presented by the case before us. The litigation pending, such as required, cannot be supposed to apply to the present case, and the record does not furnish evidence of any other. This suit does not constitute such pending litigation, for our Courts of chancery are fully competent to make all necessary orders, and to adopt effective means for the preservation of property, the subject of litigation in them. The litigation is such as is pending in some other Court, whose powers are unequal to that object.

Another ground is assumed,—That the transfer by *Town* to his sureties amounted to a mortgage or security to indemnify them against their liability to the complainant, and that the transfer by the sureties to the complainant did not change the nature of that transaction, and that, consequently, the complainant should enjoy all the advantages of a mortgagee, and be entitled to relief in a Court of equity.

To this position two objections arise,—1. It does not appear that the transfer was a mortgage, or in the nature of a mortgage; 2. That if it were a mortgage, the conclusion of jurisdiction would not follow.

The bill does not aver that the transfer was conditional, and on its face it is absolute. There is no averment that a defeasance was executed, qualifying the transfer, and no instrument of that kind is made an exhibit. We are referred to *Crumbaugh* v. *Smock*, 1 Blackf. 305. That case scarcely has a feature resembling the one before us. That was a suit in equity to foreclose the equity of redemption in a lot in *Indianapolis*. The assignment of the certificate for the lot was absolute, but the assignee, on the same day, executed to the assignor a bond binding himself to reassign the certificate on payment of the money lent with interest. The assignment under these circumstances was considered as a security in the nature of a mortgage.

The second objection would seem to be fully answered by turning to the case of *Bowyer* v. *Creigh*, 3 Rand. Rep. 25. That case was as follows:—*Caldwell* being deeply indebted, and suits depending against him for a great amount, on which it was known judgments would go against him in the following *May*, executed in *April*, 1820, a deed of trust to *John B. Caldwell*

for the security of a debt due to *Bowyer*, conveying a tract of land in *Ohio*, and all his personal property. The creditors obtained judgments, and had executions levied on a part of the property conveyed to the trustee. The trustee and the *cestui que trust* filed a bill of injunction to stop the sale, claiming the property as a security for their debt. The injunction was dissolved, and the Court held that a Court of chancery had no jurisdiction, because the law gave complete remedy. The other cases cited during this examination, all go to establish the same doctrine.

These are the most prominent positions taken to sustain the bill, and are obviously insufficient.

The case presented shows a struggle between *Town* and his sureties, and between *Henderson* and *Town & Pulliam* and the creditors of the latter; and as the case is not one in which chancery has jurisdiction, and as the dismissal of the bill does not prejudice the rights of the respective parties, we think the Circuit Court was correct in dissolving the injunction and dismissing the bill, not only of *Henderson* but of *Pulliam*. The complainant, if his case was proper for a Court of chancery, has made unnecessary parties, and parties, also, who, from the showing of the bill, were unconnected with the principal transaction. Entertaining this view, a majority of the Court consider it unnecessary to enter into a particular examination of the bill, or to express an opinion of the claim asserted by *Henderson*.

STEVENS, J.—In this case I am compelled to dissent from the Court. This I do with great reluctance and due deference, being well aware that the judge who dissents must be, and always is, presumed to be in the wrong. But not being willing to shrink from anything that in my humble and weak opinion appears to be my duty, I shall, in as few words as I can, give my views of the case. [A statement of the case is here given.]

The question before this Court is, Whether the demurrer to the bill was correctly disposed of?

I will dispose of the last assigned cause of demurrer first. As it respects so much of the last cause of demurrer as relates to the improper joinder of *Town*, and *Town & Pulliam*, as defendants, there is no error; the bill is good as to that, they may correctly be made defendants, although the bill might, perhaps, be sufficient without them. The claim of the complainant to

Nov. Term,
1834.

HENDERSON
v.
BATES.

the goods in question, and the rights of the other defendants under their several executions, are such as, at least indirectly, connect *Town* and *Town & Pulliam* with the transaction; and the complainant might or might not make them defendants at his pleasure. As to the other branch of that objection it is different. All that part of the bill which relates to the fraudulent conduct of *Town*, unconnected with his dealings with those other defendants, in contracting said debts, confessing said judgments, issuing said executions, and making the levy on said goods, is entirely irrelevant to the rights and interests at issue between the complainant and these defendants, and cannot be joined. This however does not vitiate the bill as to these defendants; the whole of those statements and every thing connected with them are mere surplusage, and might be stricken out; it in no way affects the complainant's right to the goods, nor the interests of these defendants under their executions. Those statements form no part of the *gravamen* of the complainant's complaint.

The first cause of demurrer is of more importance; it presents some difficulty, and is not, perhaps, clear of doubt.

It is a general principle, clear of doubt or uncertainty, that where a party has a complete remedy at law, equity has no jurisdiction. But to that general rule there are numerous exceptions, all well known to the books and to every lawyer. To oust the jurisdiction of equity, the remedy at law must not only in general terms be complete, but it must be in all things equally complete, effective, and salutary.

This is a bill in the nature of a bill of peace, to settle a right and to prevent a multiplicity of suits at law. The complainant is in possession of these goods, and claims 1,190 dollars and 28 cents worth of them as his own, and the remainder as mortgaged to secure the payment of 400 dollars certain rent, besides an uncertain sum in damages; these execution-plaintiffs who have levied on and seized those goods, consist of twenty-seven distinct and different firms and individual creditors, claiming under twenty-seven separate and distinct interests and judgments, &c.; and to settle this controversy by suits at law there must be twenty-seven separate and distinct suits. And again, these twenty-seven several execution-plaintiffs may select their own time when they will have the right to these goods tried; they may release their present levies and levy again when it

suits them; there is no power in a Court of law to compel a final settlement of all these claims with one suit, or at one time.

A bill of peace, say the books, may be made use of when a person has a right which may be controverted by different persons in different suits, or where it may be controverted by the same person at different times, and in such cases Courts of equity will interfere for the sake of peace, and to prevent a multiplicity of law suits. 1 Madd. under that head.—*Devonsher* v. *Newenham*, 2 Sch. & Lef. 208. In the case of *Tenham* v. *Herbert*, 2 Atk. 483, Lord *Hardwicke* says, it is certain where a man sets up a right in himself, and where the persons who controvert it with him are numerous, and he cannot, by one or two actions at law, quiet the right of each separate claimant, he may come into equity, and that Court will direct an issue to determine the right, and that determination shall be made to determine the rights of all. In Mitford's Pl. 147, it is said by that great man, Lord *Redesdale*, that a demurrer to a bill will not lie for joining distinct claims in one bill, if the complainant claim one general right, which is controverted by several defendants, for he is entitled to have such a bill. In the case of *Elridge* v. *Hill*, 2 Johns. Ch. Rep. 281, it is said that a bill of peace will be allowed where the persons who controvert the title of the plaintiff are so numerous as to render an issue in chancery proper to save a multiplicity of suits at law. In the case of *Huntington* v. *Nicoll*, 3 Johns. Rep. 595, Judge *Spencer* says, that where the complainant claims under one general right, which is controverted by several distinct persons, and where each suit would only determine the individual right in question in that suit, equity has jurisdiction in order to put an end to oppression or to a multiplicity of suits.

From this view of the authorities and the reason, I am satisfied that the complainant is entitled to the benefit of his bill, and that the demurrer should have been overruled.

There is, however, another view which may be taken as to part of this case. It appears to be a matter of controversy between the parties, whether the complainant holds the goods he received from the sureties of *Town* under an absolute purchase and sale, or under a mortgage. The defendants contend that the sale and delivery by *Town* to his sureties were absolute and not by way of a mortgage; that the instrument of writing conveying them is an absolute bill of sale and not a mortgage; and

Nov. Term, 1834.

HENDERSON
v.
BATES.

that the sureties in like manner sold them absolutely to the complainant. The complainant would seem to insist, that the instrument of writing conveying them is a mortgage and not an absolute bill of sale. Which of these parties is correct, is a matter entirely immaterial in deciding upon the demurrer. If the sale by *Town* to his sureties was absolute, and the sale by the sureties to the complainant absolute likewise, then the goods absolutely belong to the complainant, and stand upon the same footing with the other goods in dispute. But if they are held under a mortgage, the state of the title may perhaps be somewhat different, but the case as to this demurrer is not changed. A mortgage is a conveyance by the mortgagor of his title and interest in the goods to the mortgagee, and it becomes an absolute interest at law if not redeemed at the appointed time; and in cases of a mortgage on goods and chattels, the equity of redemption of the mortgagor is not subject to be seized and sold on execution; the only relief the creditor has is by a bill in equity. If then the complainant holds under a mortgage, the parties are in the right Court.

The case of *Bowyer* v. *Creigh*, 3 Rand. 25, is much relied on to sustain the demurrer to the bill in this case. That case is totally unlike the case now before us in its facts, and also in the law that governed the decision of the Court. The Court in that case bottomed their decision on three distinct and specific facts, neither of which exists in this case. The first point made by the Court in that case, was, that the main and principal fact in the bill was untrue. Now there is nothing like that can come under consideration in the decision of this demurrer; the facts of the bill are taken to be true, at least they cannot be taken to be false. The second point made by the Court in that case, was, that it was clear and palpable that the deed under which the complainant claimed, was made for the express purpose of cheating, defrauding, and hindering creditors. No such thing appears in this case; no evidence has been taken, nor is there anything in the record that even raises such a suspicion. And the third and last point made by the Court in that case, was, that the complainant had, under the *Virginia* laws and practice, complete and ample remedy at law, in one single action. The Court details and shows the proceedings under the *Virginia* laws, by which the complainant in that case could have had complete remedy at law, in a single suit; but we have

no such law or practice; there is then nothing in that case that <span>Nov. Term, 1834.</span> in the least conflicts with this opinion. .

The judge, however, in his argument upon general rules and <span>HENDERSON v. BATES.</span> principles says, that in no case can a claimant who claims as a mere incumbrancer, go into a Court of equity.  It is at least doubtful what his honour means, and therefore it is hard to know whether he is sustained by the books or not.   One thing however is certain, if he means that the equity of redemption in mortgaged goods and chattels can be seized and sold on execution, he is in direct conflict with the highest authorities; the relief in such cases is by bill in equity, at least so say the books.

As to the cross-bill of *Pulliam*, one of the defendants, about which something has been said, it is only necessary to say that it was correctly dismissed; it cannot be coupled with this suit; the interests and issues under this bill being in all things distinct, and unconnected with the interests put in issue by that cross-bill.

Before closing, it is proper that I should notice an objection which was urged in argument.   It was said that Courts of chancery should always lean strongly against withdrawing the trial of such cases as these from a Court of law.   In answer to that, it is only necessary to say that bills of this character do not interfere with the mode of trial.   It is a proceeding to prevent a multiplicity of trials on the precise same titles,—to prevent the complainant from being unnecessarily vexed and harrassed when he is willing to put an end to the litigation by a fair legal adjudication,—a proceeding to prevent unnecessary delay, doubt, and expense, and put a final quietus on the controversy.   A single issue is made up which embraces the whole merits, and is sent to a Court of law for trial, the event of which all the parties are compelled to abide.   ·All the parties litigant are parties to the trial of that issue, and the chancellor may grant as many new trials of that issue as he thinks justice requires, if there is any proper ground for dissatisfaction or good cause for a new trial: hence that objection is wholly groundless.

Per Curiam.—The decree is affirmed with costs.

*W. W. Wick* and *C. Fletcher*, for the appellant.

*J. Morrison* and *H. Brown*, for the appellees.